[Civ. No. 24845.   First Dist., Div. Three.   May 23, 1968.]

EARL COKE, as Director of Agricuture, Plaintiff and Respondent, v. RELIANCE INSURANCE COMPANY, Defendant and Appellant.

Thomas C. Lynch, Attorney General, Walter S. Rountree, Assistant Attorney General, and Roderick Walston, Deputy Attorney General, for Plaintiff and Respondent.

Jay M. Jacobus for Defendant and Appellant.

DRAPER, P. J.—Defendant is surety upon a bond filed by the principal, Creamcrest Dairy Products Company, to secure its license as a milk distributor for portions of the calendar years 1960 and 1961, in the sum of $5,000 for each period. Creamcrest has been adjudged a bankrupt. Plaintiff brought this action on behalf of milk producers who were not paid by Creamcrest during these periods, and recovered judgment for $10,000. Defendant surety appeals.

Creamcrest entered into agreements with the producers to pay them for their milk partly in cash and in part by promissory notes payable several years after delivery of the milk to Creamcrest. Appellant now argues that these extensions of time, granted by the producer-creditors, relieve it of liability under the established rule of suretyship law (Civ. Code, §§ 2819, 2820). But we do not deal with the usual type of surety bond. Rather, this statutory bond had a special characteristic which, under the statute authorizing and requiring its filing, renders these civil code sections inapplicable.

The condition of the bond, as required by statute (former Agr. Code, § 4376) is the payment by Creamcrest "in the manner required by this chapter, of all amounts due to producers" for milk purchased by it. This emphasis upon manner of payment is underlined by the provision mandating action by the director. "In case of failure by a distributor to pay any producer . . . for fluid milk . . . in the manner required by this chapter," the director shall ascertain the names of producer-creditors and institute action in their behalf. The code specifies that payment for approximately one-half of the milk delivered to a distributor in any month shall be made not later than the first day of the following month, "and the remainder not later than the fifteenth day of said month" (former Agr. Code, § 4280, subd. (e)). It is unquestioned that all producer-creditors here concerned were "large" sellers within the meaning of this subdivision, and thus required to have contracts with Creamcrest containing these provisions.

■ In light of the announced legislative purpose in enacting the Milk Control Act (see former Agr. Code, §§ 4200-4205, now Agr. Code, §§ 61871-61877), it is clear that the producer is not free to reduce his price at will (see *Karpinski* v. *Collins,* 252 Cal.App.2d 711 [60 Cal.Rptr. 846]; *United Milk Producers* v. *Cecil,* 47 Cal.App.2d 758 [118 P.2d 830]). Rather, under the legislative policy, he is to be protected from himself as well as from others.

■ Application of the civil code sections relied upon by appellant would defeat this core purpose of the quoted provision of the Agricultural Code. The very risk against which the bond issued was that Creamcrest, whether or not in collaboration with the protected producer-creditors, would defer payments.

Appellant argues that a 1955 decision (*Brock* v. *Western Nat. Indem. Co.,* 132 Cal.App.2d 10 [281 P.2d 571]) is contrary to the view we have expressed. But *Brock* has no application to the facts before us. There, the Director of Agriculture affirmatively participated in the agreement of sellers and buyer for extension of time for payment. Here, there is no evidence of participation by the director, or of knowledge by him of the agreement of the producers to accept notes. At most, it is claimed that he had means of discovering the existence of the agreements. Thus our case falls far short of the extreme presented in *Brock.* Perhaps more important, *Brock* dealt with statutes governing processors of commodities other than milk. The licensee there bought prunes, apricots, peaches and apples. His business and his license were governed by chapter 9 of the Agricultural Code. That chapter contains no provision limiting the right of buyer or seller to fix or defer the time for payment. Thus even if *Brock* be sound law, it cannot govern here.

■ We cannot accept appellant's view that the director was under a duty to disclose to it the financial problems of Creamcrest. There is neither evidence nor finding that the director had such knowledge, that appellant did not know the facts, or that the director, even if he knew the facts, had any reason to believe them unknown to the surety. Such showing is essential (see Restatement, Security, § 124).

Appellant's claim to some right of allocation of payments (Civ. Code, § 1479) is at best doubtful, but can have no possible application in the absence, as here, of any factual showing

to warrant application of the section. We find no merit in other contentions raised by appellant.

Judgment affirmed.

Salsman, J., and Brown (H. C.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 17, 1968.